## ROXANA PETROLEUM CORPORATION v. CORN et al.

Circuit Court of Appeals, Eighth Circuit. July 30, 1928.

No. 8091.

William K. Koerner, of St. Louis, Mo. (Koerner, Fahey & Young and Milton R. Stahl, all of St. Louis, Mo., on the brief), for appellant.

A. W. Hershberger, of Wichita, Kan., and James H. Harkless, of Kansas City, Mo. (Hershberger & Perreault, of Wichita, Kan., and Harkless & Histed, of Kansas City, Mo., on the brief), for appellees.

H. W. Hart, Glenn Porter, Enos E. Hook, and W. G. McDonald, all of Wichita, Kan., amici curiæ.

Before LEWIS, Circuit Judge, and PHILLIPS and JOHN B. SANBORN, District Judges.

PHILLIPS, District Judge. This is an appeal from a decree in a suit in equity brought by the Roxana Petroleum Corporation against Elmer Corn, J. M. Buffington, and the La Robb Oil Company. By its bill the Roxana Corporation sought a decree adjudging that it had the exclusive right under an oil and gas lease running from Buffington to Fred Barnes, and assigned by Barnes to the Roxana Corporation, to mine, to operate for, and to produce oil and gas from a certain tract of land theretofore deeded by Buffington to the Wichita & Midland Valley Railroad Company for a right of way, and enjoining the defendants from exploring, mining, and operating for oil and gas upon such right of way tract. After alleging the jurisdictional facts, the bill, in part, read as follows:

"That on the 8th day of September, 1911, the said J. M. Buffington and his wife, Ione H. Buffington, in consideration of the sum of five hundred dollars ($500) and the benefits to accrue to said grantors by reason of the construction and operation of the railroad of the grantee, conveyed and warranted to the Wichita & Midland Valley Railroad Company a strip of land for a right of way over and across that portion of said out-lot nine (9) in the City of Oxford lying west of a line parallel to and one hundred ninety-five feet (195') distant from the center line of said railroad as then located along the west line of said railroad as then located along the west line of said out-lot."

The bill then alleged that on the 15th day of November, 1923, Buffington, being then a widower, executed and delivered to Fred Barnes an oil and gas lease of 'out-lot nine (9) West division of Oxford, except that part of out lot nine (9) West division thereofore deeded to Wichita and Midland Valley Railroad Company for right of way," and other lands not involved herein, for the term of five years from date, and as long thereafter as oil or gas should be produced from said lands. There was attached as an exhibit to the bill a copy of such oil and gas lease. The bill further, in part, read as follows:

"That thereafter on the 7th day of December, 1923, the said Fred Barnes, for a valuable consideration, assigned said oil and gas lease to plaintiff. * * *

"That at the date on which the said J. M. Buffington executed and delivered said oil and gas lease to the said Fred Barnes, the said J. M. Buffington owned all of said out-lot nine (9), West division of Oxford, subject to the easement and right of way of said railroad thereover and that said oil and gas lease included and covered all the interest of the said J. M. Buffington in and to said out-lot nine (9) West division of Oxford, subject to said railroad easement and right of way; that the exclusive right to explore for oil and gas and to produce oil and gas from all of said out-lot nine (9) West division of Oxford was granted by said oil and gas lease and vested thereby in said lessee, Fred Barnes, and is now vested in plaintiff by virtue of the aforesaid assignment; that plaintiff can develop all of said out-lot nine (9) West division of Oxford for oil and gas without going on said right of way or in any manner interfering with the easement or right of way of said railroad.

"* * * * That the defendants herein are claiming some right, title or interest in and to that part of said out-lot nine (9) West division of Oxford over which said right of way lies; that plaintiff is informed and believes that the defendant J. M. Buffington has executed and delivered to the other defendants herein a purported oil and gas lease, the terms of which are unknown to plaintiff.

"* * * That the defendants herein have moved upon said railroad right of way and erected a derrick thereon and are now drilling an oil and gas well on said railroad right of way; that said railroad

right of way is underlaid with oil and gas sands and oil and gas and that if defendants are permitted to drill said oil and gas well thereon, the oil and gas from under said railroad right of way will be drained, and as hereinbefore set out the oil and gas under said railroad right of way is included in the oil and gas lease owned by plaintiff.

"* * * That it owns other oil and gas leases adjacent to said railroad right of way and that if defendant herein should drill oil or gas wells on said railroad right of way, said wells will draw oil and gas from said premises and also from the remainder of said out-lot nine (9) West division of Oxford, and plaintiff will be compelled to drill offset wells on said premises at great cost and expense."

The oil and gas lease from Buffington to Barnes was on a form commonly known as "88—(Producers)." It granted, demised, leased and let the land described therein for the "purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, powers, stations, and structures thereon to produce, save, and take care of said products." It contained a covenant under which the lessor warranted and agreed to defend the title to the lands described in the lease. The trial court sustained a motion interposed by the defendants to dismiss the bill for want of equity.

We held in Roxana Petroleum Corporation v. Sutter et al. (No. 8090; opinion filed July 30, 1928) 28 F.(2d) 159, that when the owner conveys a tract of land abutting on a railroad right of way tract in which such grantor owns the servient estate and the railroad the dominant estate for right of way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated, and we further held that, under the Kansas authorities, the rule applied to an oil and gas lease. See Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A. L. R. 228; Cushenbery v. Waite-Phillips Co., 119 Kan. 478, 240 P. 400.

Did the exception in the oil and gas lease clearly indicate an intention to except therefrom the oil and gas in the tract of land in and across which Buffington had theretofore conveyed a right of way to the railroad company? In Abercrombie v. Simmons, 71 Kan. 538, 546, 81 P. 208, 211 (1 L. R. A. [N. S.] 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239) the Kansas court said:

"A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. In speaking of its character, the Supreme Court of the United States said: 'A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in New Mexico v. United States Trust Co., 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. We there said (page 183 [19 S. Ct. 133]) that if a railroad's right of way was an easement it was "one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property."' Western Union Tel. Co. v. Penn. Railroad Co., 195 U. S. 540, 570, 25 Sup. Ct. 133, 141, 49 L. Ed. 312."

Counsel for the defendants contend that the exception excludes from the lease the oil and gas in the right of way tract. Counsel for the Roxana Corporation contend that it excepts only the interest conveyed to the railroad company for a right of way. The language of the exception literally construed excepts only the interest conveyed to the railroad company for a right of way. It reads: "Except that part of out-lot nine (9) * * * heretofore deeded to Wichita and Midland Valley Railroad Company for right of way." In other words, if literally construed, it excepts the dominant estate deeded to the railroad company and not the servient estate retained by Buffington. If we assume that it is subject to the construction for which defendants contend, it is equally subject to the construction for which the Roxana Corporation contends, and therefore it is ambiguous.

When the language of a deed is ambiguous, resort may be had to the surrounding circumstances existing at the time of its execution in order to ascertain the intention of the parties to the instrument. Miller v. Mowers, 227 Ill. 392, 81 N. E. 420, 423; Muzio v. Erickson, 41 Cal. App. 413, 182 P. 974, 976; Beeman v. Stilwell, 194 Iowa, 231, 189 N. W. 969, 970; Maxwell v. McCall, 145 Iowa, 687, 124 N. W. 760, 762; Hart v. Saunders, 74 Neb. 818, 105 N. W. 709; Copper Mines Co. v. Comins, 38 Nev. 359, 148 P. 349, 353; Brown v. Bremerton, 69 Wash. 474, 125 P. 785, 786; Warne v. Sorge, 258 Mo. 162, 167 S. W. 967; Kentucky Coke Co. v. Keystone Gas Co. (C. C. A. 6) 296 F. 320, 324; 18 C. J., p. 260, § 217.

In Miller v. Mowers, supra, the court said: "The meaning of the deed is ambigu-

ous, and the court has the right, in construing it, to consider the intention of the parties as gathered from the surrounding circumstances as they existed at the time it was executed, and give the deed a construction such as the parties themselves intended, if consistent with the language used."

In such a case, the court will place itself as nearly as possible in the position of the parties when the instrument was executed. Chase v. Cram, 39 R. I. 83, 97 A. 481, 482, L. R. A. 1918F, 444; Weed v. Woods, 71 N. H. 581, 53 A. 1024, 1025; Walsh v. Hill et al., 38 Cal. 481, 487; Carolina & N. W. Ry. Co. v. Carpenter, 165 N. C. 465, 81 S. E. 682, 683.

In the instant case, we find Buffington granting an oil and gas lease on 33.5 acres of land, a portion of which abuts on a railroad right of way. Buffington owned the surface rights free from easement in all of this land, except that portion in and across which he had conveyed a right of way to the railroad company. At the time this oil and gas lease was granted, the right of an adjoining owner to go upon a railroad right of way and drill for and produce oil and gas thereon was at least doubtful. We have recently held that such right does not exist. See Midland Valley R. Co. v. Sutter et al. No. 8080 (opinion filed July 30, 1928) 28 F.(2d) 163. If the contention of counsel for the defendants is correct, Buffington leased all of the land on which he had retained the surface rights and had the right to drill for and produce oil and gas, and retained or excepted the oil and gas in the right of way tract wherein he did not own the surface rights, and on which he could not drill for and produce oil and gas, placing himself in a situation where he had excepted oil and gas which ne could not possibly mine for and produce. In view of these circumstances, we think it exceedingly doubtful that Buffington intended to except the oil and gas in the right of way tract.

Counsel for the defendants assert that; if the construction contended for by the Roxana Corporation is adopted, the exception could serve no useful purpose in the lease. With this we cannot agree. The lease included, not only the oil and gas, but certain surface rights. These surface rights clearly could not be exercised on the railroad right of way. The lease contained a general warranty of title. Under such circumstances, the exception of the right of way from the oil and gas lease was both useful and proper.

In view of the foregoing, it is our opinion that the exception excluded from the oil and gas lease only the interest granted the railroad company for a right of way.

It follows that the court erred in dismissing the bill, and the decree is reversed and the cause remanded, with instructions to enter an order denying the motion to dismiss the bill, and adjudging the costs in this court and the court below in favor of the Roxana Corporation, and to proceed further in accordance with this opinion.